

FILED
AUG 2 7 2009

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| COREPLUS FEDERAL CREDIT UNION, a Connecticut corporation, and WATERBURY CT TEACHERS FEDERAL CREDIT UNION,<br>Plaintiffs,<br><br>vs.<br><br>METABANK and META FINANCIAL GROUP, INC.,<br>Defendants. | Case No. CIV 09-4130<br><br><br>COMPLAINT |

COMES NOW, the above-named Plaintiff by and through its attorney of record, and on its own behalf, for its Complaint against the Defendants states and alleges as follows:

## PARTIES

1. Coreplus Federal Credit Union, ("Coreplus") is a Connecticut credit union.

2. Waterbury CT Teachers Federal Credit Union ("Waterbury") is a Connecticut credit union.

3. Defendant MetaBank is a federally chartered savings bank organized under Iowa law and maintaining principal administrative offices, and corporate its corporate nerve center in Sioux Falls, South Dakota.

4. Meta Financial Group, Inc. is a Delaware corporation. Meta Financial Group is a holding company for MetaBank and is directly liable the errors and omissions

of MetaBank. Both MetaBank and Meta Financial Group shall hereinafter collectively be referred to "MetaBank."

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 USC § 1332, as there is complete diversity between the parties, and the amount in controversy exceeds $75,000 excluding interest, costs and attorney's fees.

6. Venue of this action is proper in this District pursuant to 28 USC § 1391 based on the acts and omissions in controversy and location of documents and witnesses connected to this dispute.

## FACTS COMMON TO ALL COUNTS

7. Coreplus and Waterbury frequently purchased renewing on-year certificates of deposition from MetaBank each in the amount of $99,000. The certificates of deposit purchased in 2007 were apparently fakes issued by a MetaBank employee who pocketed the money. MetaBank owed duties at law to supervise and control this employee's conduct and these Plaintiffs bring this lawsuit to recover for this loss.

8. Prior to March 20, 2007, Coreplus periodically invested funds with MetaBank in the form of one-year renewing certificate of deposit. On March 20, 2007, Coreplus purchased a certificate of deposit in the amount of $99,000 as it had done in previous years. The face of the contract with MetaBank indicated that the CD with interest would be payable on March 21, 2008. The certificate of deposits were sold by MetaBank employee Charlene Pickhinke.

9. Pursuant to deposit agreement, on March 20, 2007, Coreplus wired $99,000 to an account designated in correspondence from MetaBank.

10. Prior to March 9, 2007, Waterbury periodically invested funds with MetaBank in the form of one-year renewing certificate of deposit. On March 9, 2007, Waterbury purchased a certificate of deposit in the amount of $99,000 as it had done in previous years. The face of the contract with MetaBank indicated that the CD with interest would be payable on March 21, 2008. The certificate of deposit was sold by MetaBank employee Charlene Pickhinke.

11. Pursuant to deposit agreement, on March 9, 2007, Waterbury wired $99,000 to an account designated in correspondence from MetaBank.

12. On January 25, 2008 the Plaintiffs learned by a faxed letter from MetaBank that potential problems existed with their certificate of deposits. The letter from MetaBank is attached hereto as Exhibit 1.

13. After additional inquiries in response to the January letter from MetaBank, Plaintiffs finally learned that a MetaBank employee used MetaBank's logo and business documents to place as much as $4.2 million in fake certificates of deposit with MetaBank customers, including the Plaintiffs. A true and correct copy of the certificate of deposit agreement between MetaBank and the Plaintiffs is attached hereto as Exhibit 2.

14. On information and belief, Pickhinke has been charged with federal crimes related to her conduct.

15. Upon learning of the potential internal fraud related to Pickhinke, Plaintiffs have made demand upon MetaBank for payment of its deposits with no response.

3

16. On May 15, 2008, MetaBank filed its 10-Q report with the SEC, which noted that Pickhinke had in fact stolen deposit funds in excess of $4.2 million.

17. At present, and on information and belief, it is believed that not a single MetaBank customer has received a return on their deposit.

18. On information and belief, Pickhinke was in a supervisory position at MetaBank at the time of her actions material to this Complaint, and otherwise held a position of trust and confidence as a bank officer.

19. On information and belief, Pickhinke continued her theft of deposits at MetaBank over the course of several years and throughout a period of time. During the course of her conduct, MetaBank failed to detect her theft, and protect Plaintiffs against Pickhinke's conduct.

20. As a result of Pickhinke's conduct, other credit unions across the country have commenced litigation against MetaBank to recover their lost deposits. MetaBank has to this point denied any legal obligation for their employee's wrongful conduct that occurred under the Defendants' watch.

## COUNT 1 – BREACH OF CONTRACT

21. Plaintiffs reallege each of the paragraphs contained above as though fully set forth herein.

22. The deposit funds wired by Plaintiffs to MetaBank constitute valid and binding contracts between MetaBank based on Pickhinke's ostensible authority to bind MetaBank to the contract as its agent.

23.     MetaBank's failure to repay the deposits and accrued interest to Plaintiffs constitutes a breach of contract. Plaintiffs are entitled to money damages resulting from MetaBank's breach.

## COUNT 2 – NEGLIGENCE

### Hiring, Training, Supervision and Oversight

24.     Plaintiffs reallege each of the paragraphs contained above as though fully set forth herein.

25.     MetaBank was negligent in its hiring of Pickhinke. MetaBank was further negligent in its supervision of Pickhinke. MetaBank was negligent in its placement and maintenance of Pickhinke as an officer of MetaBank, and otherwise giving her a supervisory position.

26.     MetaBank was further negligent in its failure to adopt appropriate internal controls and policies of checks and balance that would have prevented Pickhinke from stealing the deposits. MetaBank was also negligent in its failure to monitor the status of as many as 42 credit union customers who, on information and belief, were known customers of MetaBank. As such, MetaBank reasonably should have monitored and otherwise audited the credit union customers, and their banking activity, and otherwise should have taken reasonable internal steps to prevent Pickhinke from stealing customer money.

27.     The money stolen by Pickhinke was actually wired to and deposited in MetaBank accounts. MetaBank was further negligent in allowing its own employee to establish and funnel $4.2 million dollars through MetaBank accounts.

5

28. Plaintiffs have been injured as a direct and legal consequence of MetaBank's various acts of negligence.

## COUNT 3 – VICARIOUS LIAIBLITY

29. Plaintiffs reallege each of the paragraphs contained above as though fully set forth herein.

30. Pickhinke's conduct constitutes, among other things, conversion, fraud, theft and negligence.

31. At all times relative hereto, Pickhinke was acting as the agent of MetaBank and each act of dishonesty or negligent omission described above was accomplished in the course and scope of her employment as a MetaBank employee and officer.

32. MetaBank is vicariously liable for the acts and omissions of Pickhinke.

33. Plaintiffs have been damaged and sustained detriment as a direct and legal cause of those acts which MetaBank is vicariously liable for.

WHEREFORE, Plaintiffs pray for relief against the Defendants as follows:

a. for money damages in an amount to be determined at trial, but not less than $198,000;

b. for prejudgment interest and all costs and disbursements so taxable as a matter of law; and

c. for such further and different relief as the Court deems just and equitable in this action.

## DEMAND FOR JURY TRIAL

Dated this 27 day of August, 2009.

                Cadwell Sanford Deibert & Garry, LLP

                Shawn M. Nichols
                200 East 10th Street, Suite 200
                PO Box 2498
                Sioux Falls, SD  57101-2498
                (605) 336-0828
                Attorneys for Plaintiff